**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| National Stabilization Agreement of the Sheet Metal | ) | |
| Industry Trust Fund, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| E A Breen Jr. Roofing & Sheet Metal Work, Inc. | ) | |
| a/k/a E A Breen, Jr. Roofing & Sheet Metal, Inc. | ) | |
| a/k/a  E A Breen Jr. Rfg & Sheet Metal Works | ) | |
| a/k/a  E A Breen Jr. Rfg & SM Works, Inc. | ) | MBD No. 05-mc-10308-RCL |
| | ) | |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Winter Hill Bank, | ) | |
| Trustee | ) | |

**PLAINTIFFS' OPPOSITION TO EMERGENCY MOTION TO**
**DISSOLVE POST-JUDGMENT ATTACHMENT**
**BY TRUSTEE PROCESS UPON DEFENDANT'S**
**BANK ACCOUNT AT WINTER HILL BANK**

**Introduction**

The National Stabilization Agreement of the Sheet Metal Industry Trust Fund

("SASMI Trust Fund").  Sheet Metal Workers' National Pension Fund ("NPF"),

International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI")

(f/k/a National Training Fund for Sheet Metal and Air Conditioning Industry), National

Energy Management Institute Committee ("NEMI"), Sheet Metal International

Association Scholarship Fund ("SMWIASF"), and Sheet Metal Occupational Health

Institute Trust Fund ("SMOHI") (NPF, ITI, NEMI, SMWIASF and SMOHI are jointly

referred to as "National Funds" and together with SASMI Trust Fund as "Plaintiff

Funds"), brought an action in the U.S. District Court for the Eastern District of Virginia

to collect delinquent contributions from E. A. Breen Roofing & Sheet Metal Work, Inc.
a/k/a E. A. Breen Roofing & Sheet Metal, Inc. a/k/a E A Breen Jr. Rfg. & Sheet Metal
Works a/k/a E A Breen Jr. Rfg. & SM Works, Inc., ("Company" or "Defendant"),
pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29
U.S.C. Sections 1132 and 1145 ("ERISA") and the Labor Management Relations Act, as
amended, 29 U.S.C., Section 185(a)("LMRA").  Affidavit of Diane Ferguson at par. 7,
Exhibit 5.  The Plaintiff Funds obtained a default judgment on May 13, 2005.  The
judgment was registered in this court on August 15, 2005. Docket #1.  Execution was
issued by this court on November 4, 2005.  Docket #2.

On November 18, 2005, the Plaintiff Funds filed an Ex Parte Motion for Order of
Attachment by Trustee Process seeking to attach $29,586.29 held in Defendant's bank
account(s) at Winter Hill Bank ("Bank ").  On November 28, 2005, the court granted the
motion for attachment by trustee process and, on December 2, 2005, issued a summons to
trustee as to Winter Hill Bank.  Docket #7.  On December 15, 2005, the Bank filed an
Answer of Trustee in which it stated, *inter alia*, that an account of the Defendant
contained funds with a value in excess of the judgment amount and that sufficient funds
had been restricted and made inaccessible to Defendant pending further order of the
Court.  Docket #8.

In an effort to accommodate Defendant's desire to resolve this matter by way of
settlement rather than through trustee execution, the Plaintiff Funds refrained from taking
further steps to execute on the trustee process attachment while pursuing settlement
discussions.  Affidavit of Randall E. Nash at pars. 4, 6-7.  Defendant now seeks to
dissolve the attachment for three different reasons, one of which is the Plaintiff Funds'

delay in executing on the trustee process attachment; a delay that the Plaintiff Funds

agreed to as an accommodation to Defendant.  For all of the reasons set forth below,

Defendant's motion to dissolve the attachment should be denied.

**Argument**

I.  THE U.S. DISTRICT COURT IN THE EASTERN DISTRICT OF VIRGINIA HAS
PERSONAL JURISDICTION OVER DEFENDANT.

Defendant argues that personal jurisdiction over Defendant does not lie in the

Eastern District of Virginia because Defendant has not maintained "minimum contacts"

with that forum.  The action brought against Defendant in Virginia is a "federal question"

case brought in accordance with the provisions of federal statutes including ERISA.  In

such cases, the issue is not whether a defendant has "minimum contacts" with the forum

state but, rather, with the United States.  See United Electrical, Radio and Machine

Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).

Section 502(e)(2) of ERISA provides as follows:

> Where an action under this subchapter is brought in
> a district court of the United States, it may be brought in
> the district where the plan is administered, where the
> breach took place, or where a defendant resides or may be
> found, and process may be served in any other district
> where a defendant resides or may be found.

29 U.S.C. Section 1132 (e)(2).  In the instant case, the action was brought in the district

where the Plaintiff Funds are administered, Affidavit of Diane Ferguson at pars. 1-2;

Affidavit of Walter Shaw at pars. 1-2.  Defendant, by its own admission, was served in

the district where it resides or may be found.  Defendant's Memorandum at p.1.[1]  Such

"extraterritorial service" is authorized by ERISA, United Electrical Workers, supra, and

---

[1] The assertions contained in Defendant's motion and memorandum are not supported by affidavits.  The
Plaintiff Funds do not, however, dispute the Defendant's admission that "(s)ervice was made in
Massachusetts upon Breen Roofing through its corporate officer, Mr. Ernest Breen."

3

"comports with all constitutional requirements." <u>Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.</u>, 212 F. 3d 1031, 1035 (7th Cir. 2000)(citing cases, including <u>United Electrical Workers</u>, <u>supra</u>).

Moreover, to the extent the "minimum contacts" analysis advanced by Defendant may apply, there is ample evidence of such contacts with Virginia.  As a signatory to the collective bargaining agreements, Defendant is bound by the trust agreements and rules and regulations of the Plaintiff Funds. <u>Affidavit of Diane Ferguson</u> at pars. 3-6; <u>Affidavit of Walter Shaw</u> at pars. 3-6. These documents clearly require Defendant to contribute to the Plaintiff Funds, establish remedies for the failure to contribute, and clearly identify the situs of the Plaintiff Funds as Virginia. <u>Affidavit of Diane Ferguson</u>, Exhibits 1-4; <u>Affidavit of Walter Shaw</u>, Exhibit 1-3.  In fact, Defendant made such contributions for a significant period of time before ceasing to submit the required reports and payments, the conduct that led to the filing of the action in Virginia, <u>Affidavit of Diane Ferguson</u> at pars. 7; <u>Affidavit of Walter Shaw</u> at par. 7.  For all of the foregoing reasons, the U.S. District Court in the Eastern District of Virginia has personal jurisdiction over Defendant.

II.  THE PLAINTIFF FUNDS ATTEMPTED SERVICE UPON DEFENDANT IN ACCORDANCE WITH RULE 4.2(c).

Defendant asserts that "proper Massachusetts procedure has not been followed in the service to the defendant of the Order of the attachment." <u>Defendant's Memorandum</u> at p. 4.  Rule 4.2(c) of the Massachusetts Rules of Civil Procedure governs the service of a trustee summons.  This rule provides, in pertinent part, as follows:

> Promptly after the service of the trustee summons upon the trustee or trustees, a copy of the trustee summons with the officer's endorsement thereon of the date or dates of services shall be served upon the defendant in the manner provided by Rule 5.

As discussed below, the Plaintiff Funds attempted service in accordance under Rule 4.2(c).

After recieving the trustee summons, Plaintiff Funds' counsel obtained the address of Defendant and its registered agent from information then on file with the Corporations Division of the Secretary of the Commonwealth.  <u>Affidavit of Randall E. Nash</u> at par. 2, Exhibit 1.  Having obtained this information, Plaintiff Funds' counsel instructed the Middlesex County Sheriff's office to serve Defendant in accordance with the provisions of Rule 4.2(c).  <u>Id</u>. at par. 3, Exhibit 2.

The return of service, dated December 13, 2005, indicates that the deputy sheriff made diligent search for Defendant but could not find it within the county.  <u>Docket #13</u>.  On December 15, 2005, at or about the time he received the return of service from the deputy sheriff, Plaintiff Funds' counsel was contacted by a representative of Defendant to discuss the summons and the possible resolution of the matter.  <u>Affidavit of Randall E. Nash</u> at pars. 4-5. Clearly, the Plaintiff Funds attempted service in accordance with Rule 4.2 (c) and Defendant had actual notice of the summons and attachment.

## III. THE TIME FOR EXECUTING ON THE ATTACHMENT BY TRUSTEE PROCESS HAS NOT RUN.

Rule 69(a) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise.  The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the

5

> remedy is sought, except that any statute of the United
> States governs to the extent that it is applicable.

Fed. R. Civ. P. Rule 69(a).  Defendant argues that the attachment by trustee process must

be dissolved because the Plaintiff Funds have not complied with Massachusetts law,

namely G.L.c. 246, Section 40.  That section provides as follows:

> If the goods, effects and credits in the hands of a person
> adjudged a trustee are not demanded of him by force of the
> execution within thirty days after final judgment, they shall
> be liable to another attachment, whether made before or
> after the judgment; or if there has been no such second
> attachment, they may be recovered by the defendant.

For the reasons discussed below, this section does not apply at this stage of the

proceedings.

In Massachusetts, a judgment creditor may not execute on a bank account except

by trustee process.  Gabovitch v. Lundy, 584 F.2d. 559, 561 (1st Cir. 1978).  Further,

there must be a judgment against the *trustee* in order for a trustee execution to issue.

Arthur D. Little, Inc. v.  East Cambridge Savings Bank, 35 Mass. App. Ct. 734, 738-739

(1994); Elias Brothers Restaurants v. Acorn Enterprises, 931 F. Supp. 930 (D. Mass,

1996); Thompson-Durkee Company v. Express Plumbing & Heating Company, 1994

Mass. App. Div. 190 (1994).  Such judgment against a trustee is not entered until after a

motion to charge the trustee has been allowed.  Id. at 191 (citing Arthur D. Little, supra).

The instant case involves a *post-judgment* attachment by trustee process, a

procedure that has been approved by this court.  Commercial Printers of Connecticut, Inc.

v. Letter-Men Publishing Company, 1988 WL 45402 (D. Mass. 1988).  Defendant seems

to suggest that, pursuant to G.L.c. 246, Section 40, the Plaintiff Funds were required to

execute within thirty (30) days of November 4, 2005 (when it obtained an execution

against Defendant) December 2, 2005, (when the trustee summons issued) or some other unspecified date.  At this stage of the proceedings, however, the Plaintiff Funds are not in a position to execute on the bank account and the running of the thirty (30) day period for execution set forth in c. 246, Section 40 has not commenced.

The Bank has not yet been "adjudged a trustee" within the meaning of c. 246, Section 40.  Indeed, at the request of the Defendant, the Plaintiff Funds had refrained from filing a motion to charge the trustee, a precondition to obtaining such an adjudication.  Affidavit of Randall E. Nash at pars. 6-7. Thus, there has been no "final judgment" against the Bank and, consequently, no trustee execution by which the Plaintiff Funds could make the demand described in c.  246, Section 40.[2]  For all of these reasons, the time for executing on the attachment has not run and, indeed, has not even commenced.

---

[2] The execution obtained on November 4, 2005 is ineffective as to funds held by the Bank.  Gabovitch, 584 F.2d at 561.

**Conclusion**

For all of the foregoing reasons, the Plaintiff Funds respectfully request that the

court deny the Defendant's motion to dissolve the attachment by trustee process.  The

Plaintiff Funds will then proceed with the filing of a motion to charge the Bank as trustee

and, after obtaining judgment against the Bank, will obtain and serve the trustee

execution "within thirty days after final judgment" as required by G.L.c. 246, Section 40.

> Respectfully submitted,
> PLAINTIFFS,
> NATIONAL STABILIZATION
> AGREEMENT OF THE SHEET
> METAL INDUSTRY TRUST
> FUND, ET AL
> By their attorney,
>
> */s/ Randall E. Nash*
> Randall E. Nash
> BBO #546963
> Attorney At Law
> 11 Beacon Street, Suite 500
> Boston, Massachusetts  02108
> (617)742-5511
> nash875@verizon.net

March 2, 2006
Date

<u>Certificate of Service</u>

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
March 2, 2006.

> */s/ Randall E. Nash*
> Randall E. Nash
> BBO #546963

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| National Stabilization Agreement of the Sheet Metal | ) |
| Industry Trust Fund, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| E A Breen Jr. Roofing & Sheet Metal Work, Inc. | ) |
| a/k/a E A Breen, Jr. Roofing & Sheet Metal, Inc. | ) |
| a/k/a  E A Breen Jr. Rfg & Sheet Metal Works | ) |
| a/k/a  E A Breen Jr. Rfg & SM Works, Inc. | )MBD No.05-mc-10308-RCL |
| | ) |
| Defendant | ) |
| | ) |
| and | ) |
| | ) |
| Winter Hill Bank, | ) |
| Trustee | ) |

AFFIDAVIT OF RANDALL E. NASH

I, Randall E. Nash, under oath and of my own personal knowledge, hereby depose

and state as follows:

1.  I am an attorney licensed to practice in the Commonwealth of Massachusetts

and the United States District Court for the District of Massachusetts.  I am

local counsel to the plaintiffs and counsel of record in the above-captioned

matter.

2.  On December 5, 2005, I made arrangements for service of the summons to

trustee that was issued by this court on December 2, 2005.  Prior to arranging

for service on the defendant, I reviewed the information on file with the

Corporations Division of the Secretary of the Commonwealth. A true and

correct copy of the summary screen that I reviewed on December 5, 2005 is attached as Exhibit 1.

3. Having determined from the information on file that the address of the defendant and its registered agent was 238 Harvard Street, Medford, MA, I requested that the defendant be served at that address. A true and correct copy of my letter to the Middlesex Sheriff's office requesting service upon the trustee and the defendant is attached as Exhibit 2.

4. On December 15, 2005, I received a voice mail message from Ernie Breen. In this message, Mr. Breen said he wanted to talk to me about a summons he learned about on December 14, 2005. I returned Mr. Breen's call and we talked about the possibility of resolving the matter. Mr. Breen said he would get back to me with a proposal.

5. At or about the same time I heard from Mr. Breen, I received the return of service indicating that the deputy sheriff had made a diligent search for the defendant but had been unable to effect service.

6. On December 28, 2005, I received a voice mail message from Attorney Lisa Mediano in connection with this matter. I tried reaching Attorney Mediano on December 29, 2005. We spoke for the first time on Dcember 30, 2005. Attorney Mediano and I also discussed possible settlement and I agreed that my clients would suspend further action on the trustee process attachment pending further settlement discussions. Attorney Mediano sent me a letter dated December 30, 2006 in which she thanked me for "agreeing to suspend further legal action in this matter pending our settlement negotiations." I have

not attached a copy of this letter as it contains references to settlement proposals.

7. Attorney Mediano and I continued to discuss possible settlement over the course of the next few weeks, through the time that Attorney Mediano filed the instant motion. My clients and I abided by our agreement to suspend further action pending these discussions.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 2nd DAY OF

MARCH, 2006

/s/ *Randall E. Nash*
Randall E. Nash
BBO # 546963



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512
Telephone: (617) 727-9640

---

*E.A. BREEN JR. ROOFING & SHEET METAL WORKS, INC.*
**Summary Screen**                                                         [?]
                                                              Help with this form

| Request a Certificate |
|---|

**The exact name of the Domestic Profit Corporation:** E.A. BREEN JR. ROOFING & SHEET METAL WORKS, INC.

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 000809289

**Date of Organization in Massachusetts:** 01/23/2002

**Current Fiscal Month / Day:** 12 / 31

**The location of its principal office in Massachusetts:**
No. and Street:      238 HARVARD ST.
City or Town:     MEDFORD          State: MA     Zip: 02155     Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:                State:          Zip:          Country:

**The name and address of the Registered Agent:**
Name:         ERNEST A. BREEN, JR.
No. and Street:    238 HARVARD ST.
City or Town:     MEDFORD          State: MA     Zip: 02155     Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration<br>of Term |
|---|---|---|---|
| PRESIDENT | ERNEST A. BREEN JR. | 238 HARVARD ST.<br>MEDFORD, MA 02155 USA<br>SAME<br>SAME, MA 02155 USA | NONE |
| TREASURER | ERNEST A. BREEN JR. | 238 HARVARD ST.<br>MEDFORD, MA 02155 USA<br>SAME<br>SAME, MA 02155 USA | NONE |
| SECRETARY | ERNEST A. BREEN JR. | | NONE |

**EXHIBIT 1**

| | | 238 HARVARD ST. MEDFORD, MA 02155 USA SAME SAME, MA 02155 USA | |
|---|---|---|---|
| DIRECTOR | ERNEST A. BREEN JR. | 238 HARVARD ST. MEDFORD, MA 02155 USA SAME SAME, MA 02155 USA | NONE |

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share Enter **0** if no Par | Total Authorized by Articles of Organization or Amendments | | Total Issued and Outstanding *Num of Shares* |
|---|---|---|---|---|
| | | *Num of Shares* | *Total Par Value* | |
| CNP | $0.00000 | 1,000 | $0.00 | 0 |

__ Consent     __ Manufacturer     __ Confidential Data     __ Does Not Require Annual Report

__ Partnership   **X** Resident Agent   **X** For Profit     __ Merger Allowed

**Select a type of filing from below to view this business entity filings:**
ALL FILINGS
Administrative Dissolution
Annual Report
Application for Reinstatement
Application For Revival

View Filings           New Search

| Comments |
|---|
| |

© 2001 - 2005 Commonwealth of Massachusetts
All Rights Reserved

Help

# RANDALL E. NASH
## ATTORNEY AT LAW
11 BEACON STREET, SUITE 500
BOSTON, MASSACHUSETTS 02108
Telephone 617-742-5511
Fax 617-742-2187
E-mail nash875@earthlink.net

Admitted to Practice in Massachusetts and Maine



*South Shore Office*
166 SCHOOSETT STREET
SUITE 2B
(ROUTE 139)
PEMBROKE, MA
02359
Telephone 781-829-2075
Fax 781-829-2076

December 5, 2005

Middlesex Sheriff's Office
Civil Division
271 Cambridge Street
PO Box 410180
Cambridge, MA    02141

> Re:    National Stabilization Agreement of the Sheet Metal Industry
>         Trust Fund, et al v. EA Breen Jr. Roofing & Sheet Metal Work,
>         Inc. and Winter Hill Bank, Trustee
>
>         MBD No. 05-mc-10308

Dear Sir/Madam:

Enclosed please find a trustee summons in the above referenced matter. Please serve this summons upon the trustee, Winter Hill Bank, at the following address:

> Winter Hill Bank
> 342 Broadway
> Somerville, MA   02145

Following service upon the trustee, please serve a copy of the trustee summons upon the defendant, EA Breen Jr. Roofing & Sheet Metal Work, Inc., at the following address:

> EA Breen Jr. Roofing & Sheet Metal Work, Inc.
> 238 Harvard St.
> Medford, MA   02155

The copy of the trustee summons served upon the defendant should include the officer's endorsement thereon of the date of service upon the trustee.

**EXHIBIT 2**

Middlesex Sheriff's Office
December 5, 2005
Page 2

Thank you for your prompt attention to this request. Please forward your return of service and your invoice to my office. Please do not hesitate to contact me if you have any questions.

Very truly yours,

Randall E. Nash

cc:    Shanna Cramer (w/ enc)

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| National Stabilization Agreement of the Sheet Metal Industry Trust Fund, et al. | ) |
|  | ) |
| Plaintiffs, | ) |
| vs. | ) |
|  | ) |
| E A Breen Jr. Roofing & Sheet Metal Work, Inc. | ) |
| a/k/a E A Breen, Jr. Roofing & Sheet Metal, Inc. | ) |
| a/k/a E A Breen Jr. Rfg & Sheet Metal Works | ) MBD No. 05-mc-10308-RCL |
| a/k/a E A Breen Jr. Rfg & SM Works, Inc. | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| Winter Hill Bank, | ) |
| Trustee | ) |

## AFFIDAVIT OF WALTER SHAW

I, WALTER SHAW, under oath and of my own personal knowledge, hereby depose and state as follows:

1.      I am the Billing and Eligibility Manager of the Sheet Metal Workers' National Pension Fund ("NPF" or "Pension Fund"), and I am employed by Associated Third Party Administrators, Inc., the administrative manager of the Pension Fund.  Through a series of administrative service agreements, the Pension Fund monitors the remittance and collection of monthly fringe benefit contributions for the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI") (f/k/a National Training Fund for the Sheet Metal and Air Conditioning Industry), Sheet Metal Workers' International Association Scholarship Fund ("SMWIASF"), National Energy Management Institute Committee ("NEMI") and Sheet Metal Occupational Health Institute Trust Fund ("SMOHI") (ITI, SMWIASF, NEMI and SMOHI

164949-1

together with the NPF are jointly referred to as "National Funds"). As the Billing and Eligibility

Manager, I am familiar with the payment histories of employers obligated to make contributions to

the National Funds.

2.      NPF, ITI and SMWIASF are jointly trusteed trust funds established and maintained

under 29 U.S.C. § 186(c)(15) and "multiemployer plan[s] and "employee benefit plan[s]" within the

meaning of 29 U.S.C. § 1002(37),(1),(2) and (3). NEMI and SMOHI are jointly trusteed trust funds

established and maintained under 29 U.S.C. § 186(c). The National Funds are administered in

Virginia from their and my principal place of business at 601 North Fairfax Street, Suite 500,

Alexandria, Virginia, 22314.

3.      Pursuant to collective bargaining agreements ("Labor Contract") with Sheet Metal

Workers' International Association Local Union No. 17 ("Local 17"), E A Breen Jr. Roofing &

Sheet Metal Work, Inc. a/k/a E A Breen, Jr. Roofing & Sheet Metal, Inc. a/k/a  E A Breen Jr.

Rfg & Sheet Metal Works a/k/a  E A Breen Jr. Rfg & SM Works, Inc. ("Company" or

"Defendant") is obligated to submit monthly remittance reports and pay contributions to the

National Funds for time worked or paid to their covered employees. The Labor Contract further

binds Defendant to the terms and conditions of the Trust Agreements and Rules and Regulations.

4.      Attached as Exhibit 1 is a true and correct copy of Article V of the National Pension

Funds' Agreement and Declaration of Trust which relates to the payment of contributions to the

National Pension Fund.

5.      Attached as Exhibit 2 is a true and correct copy of Article XIII of the National

Pension Funds' Agreement and Declaration of Trust. Article XIII, Section 4 pertains to the Situs

and Governing Law of the National Pension Fund.

164949-1

6.      Attached as Exhibit 3 is a true and correct copy of the Rules and Regulations of the National Pension Fund relating to collection of amounts owed by delinquent employers.

7.      Beginning in or around August of 2003, Defendant began submitting monthly remittance reports and making contributions to the National Funds.  In or around July of 2004, Defendant stopped submitting remittance reports and contributions to the National Funds. Accordingly, the National Funds, along with the National Stabilization Agreement of the Sheet Metal Industry Trust Fund, filed suit against Defendant in the U.S. District Court for the Eastern District of Virginia [Civil Action No. 05-108 (LMB)].

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 1st DAY OF

MARCH, 2006

/s/ Walter Shaw
WALTER SHAW

164949-1

# SHEET METAL WORKERS' NATIONAL PENSION FUND



# *Amended and Restated Agreement and Declaration of Trust*

*As amended through June 1, 2003*

**Sheet Metal Workers' National Pension Fund**
Edward F. Carlough Plaza
601 North Fairfax Street, Suite 500
Alexandria, Virginia 22314

## EXHIBIT 1

**Section 13.    Fiduciary Liability Insurance**

The Trustees may authorize the purchase of insurance by the Fund for itself and/or for any of its current or former Trustees, as well as for any other current or former fiduciary of the Fund (including any officer or director of a Fund subsidiary and any former trustee of another fund which has merged into the Fund), to cover liability or losses occurring by reason of the act or omission of any such person; provided, however, that any such insurance purchased by the Fund must permit recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary. Such insurance may contain a non-recourse endorsement only in accordance with ERISA and only if the additional premium for such endorsement is not paid from the Fund. Nothing herein shall in any way limit or affect the ability of any Trustee or other fiduciary to otherwise obtain additional fiduciary liability insurance coverage, to the extent permitted by ERISA.

# ARTICLE V.  CONTRIBUTIONS TO THE FUND

**Section 1.    Rate of Contributions**

Subject to such conditions as the Trustees may impose and except as otherwise provided herein, contributions to the Fund shall be remitted monthly in such amounts as shall be set forth in a Collective Bargaining Agreement between the Employer and the Union or in such other document or agreement as may be approved by the Trustees with respect to any Employer whose participation in the Plan is not pursuant to a Collective Bargaining Agreement. From the time received, such Contributions shall be allocated, pursuant to the terms of the Plan, between the Retiree Health Account and the portion of the Trust Fund to be used to provide retirement benefits under the Plan. Contributions must generally be made on the basis of a uniform hourly rate for all Employees within a particular classification of employees covered by any such agreement and generally must be made for each hour or part of an hour each Employee works under the Collective Bargaining Agreement or other agreement, except as otherwise provided below. Contributions made or required to be made pursuant to a Collective Bargaining Agreement or other agreement are plan assets from the date they are required to be contributed, whether or not they are collected or received by the Fund. Subject to the foregoing provisions, Contributions shall be made pursuant to the following rules:

a.    The Collective Bargaining Agreement or other agreement may provide, in a form and substance satisfactory to the Trustees, that in the case of any person who is employed by the Employer to perform work other than as a building trades journeyman or building trades apprentice, no contributions will be made for such person during a specified period of employment that does not exceed the first 90 calendar days of his or her employment (a "New Employee") with the Employer who is a party to such Collective Bargaining Agreement or other agreement, whether or not such days of employment are consecutive. Such New Employee will not accrue benefits under the Plan with respect to such specified period of time and will not be considered to be a Covered Employee or, consequently, to be working in Covered Employment under the Plan during such specified period of time. In addition, such Collective Bargaining Agreement or other agreement may provide for contributions at a lesser rate for New

Employees than for other Employees during the period beginning immediately after the end of the specified period of time described in the first sentence of this subsection (a) and ending with the 364th calendar day after the New Employee's initial employment date with the Employer, provided the New Employee was not a participant in the Plan at any time before his or her current period of employment and provided such lesser rate of contributions shall be at least $0.05 per hour worked.

b.    If a Collective Bargaining Agreement or other agreement requires contributions to the Fund on behalf of Employees, and if a Collective Bargaining Agreement or other agreement requires contributions to any other benefit plan covering such Employees on overtime hours of work, to be paid at rates of one and one-half or two times the regular hourly rate (or such other wage multiplier as such agreement may contain), then contributions shall be paid to the Fund on the same basis notwithstanding any contrary provision in the Collective Bargaining Agreement or other agreement governing contributions to the Fund.

c.    If a Collective Bargaining Agreement or other agreement requires contributions to the Fund on behalf of Employees, and if a Collective Bargaining Agreement or other agreement requires contributions to any other benefit plan covering such Employee on hours for which the Employee is paid but does not perform services (such as payment for sickness absences, vacation, holidays or any other similar hours for which an employee is paid), then contributions for such hours shall also be paid to the Fund notwithstanding any contrary provisions in the Collective Bargaining Agreement or other agreement governing contributions to the Fund.

d.    Contributions shall be paid on apprentices as provided in the Collective Bargaining Agreement or other agreement at a uniform rate which shall be no less than the contribution rate for journeymen, unless the Collective Bargaining Agreement or other agreement provides for graduated contribution rates for apprentices and such graduated contribution rates for apprentices bear the same relationship to the contribution rates for journeymen as the wage rates for apprentices bear to the wage rates for journeymen specified in the Collective Bargaining Agreement or other agreement.

e.    If an Employer's status as a Contributing Employer has been terminated in accordance with the Plan, the Trustees may refuse to accept any contributions by such terminated Employer and may, in accordance with the Plan, refuse to grant credited service that would otherwise be credited with respect to such contributions.

## Section 2.    Effective Date of Contributions

All Contributions shall be made effective as required by the Collective Bargaining Agreement or other agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement or other agreement with the Union or until he ceases to be an Employer within the meaning of this Trust Agreement as hereinafter provided.

**Section 3.    Mode of Payment**

All Contributions shall be payable to the Sheet Metal Workers' National Pension Fund and shall be paid in the manner and form determined by the Trustees.

**Section 4.    Default in Payment**

a.    Employers shall submit a remittance report and the required Contributions to the Fund by the twentieth (20th) of the month following the month in which the covered employment was performed.    Failure to file an accurate report and pay all Contributions due shall constitute a delinquency, and such Employer shall be deemed a delinquent Employer.    The Trustees are empowered to take whatever steps they deem necessary, including legal action, to collect such delinquent Contributions, any provisions of the Collective Bargaining Agreement or other agreement requiring Contributions to the Fund to the contrary notwithstanding.

b.    Nonpayment by an Employer of any Contributions when due shall not relieve any other Employer of his obligations to contribute.

c.    Employers who fail to meet their Contribution obligation to the Fund on a timely basis increase the administrative costs of the Fund.    These costs include, but are not limited to, expenses related to the need for additional employees and agents of the Fund who must be assigned to collection activities and expenses for additional accounting and reporting activities.    In the event that the Fund is forced to file suit to collect delinquent Contributions, the administrative costs of collecting the delinquent Contributions increase even further.    Because the exact amount of the administrative costs is difficult, if not impossible, to ascertain with respect to each delinquent Employer, the Fund shall assess liquidated damages against delinquent Employers as follows.    If an Employer fails to pay the required Contributions and submit accurate supporting remittance reports to the Fund by the 25th day of the month for work performed in the prior month, that Employer will be liable for liquidated damages equal to the greater of 10% of the delinquent Contributions or $50.00.    Those liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses caused by an Employer's failure to make timely remittance of Contributions to the Fund. Delinquent Contributions shall bear interest from the original due date until they are paid at the rate of 1% per month, compounded monthly.    The Trustees shall have the authority, however, to waive all or part of the liquidated damages or interest for good cause shown.    In the event that suit is filed against a delinquent Employer, liquidated damages shall be the greater of 20% of the delinquent Contributions or interest on the delinquent Contributions at the above stated rate of interest.    Those liquidated damages are estimated, to the best of the Trustees' ability, to approximate the cost to the Fund of the additional administrative expenses and losses incurred when the Fund takes legal action to collect delinquent Contributions.

d.    In the event that the Trustees engage legal counsel to assist in collection, the delinquent Employer shall also be liable for reasonable attorneys' fees (with a minimum of $50.00) and for all reasonable costs incurred in the collection process,

including court fees, audit fees, etc. The Trustees shall have the authority, however, to waive all or part of the attorneys fees or other collection costs for good cause shown.

e.     In addition to the remedies provided for in subsections (c) and (d) of this section, the Trustees may seek such other legal and equitable relief as they may deem appropriate.

f.     An Employer's liability for payment of a delinquency and the other amounts required to be paid by a delinquent Employer under this Section shall not be subject to the grievance and arbitration procedures contained in the Collective Bargaining Agreement or other agreement.

g.     If no Employee of an Employer performed covered employment within a particular month, a remittance report shall be filed on the twentieth (20th) day of the following month indicating that no covered employment was performed. Failure to do so shall subject the Employer to liability for all fees and costs resulting from his failure to file such a report.

**Section 5.     Report on Contributions**

The Employers shall make all Contributions and send completed reports on Contributions to the Fund at such time and in such manner as the Trustees may require. The Trustees shall have the authority to conduct an audit of the entire payroll and wage records encompassing all employees of the Employer, for the purpose of determining the accuracy of Contributions made to the Fund. If the audit reveals that inaccurate reports or insufficient Contributions have been made, the Employer may, in the discretion of the Trustees, be required to pay all fees, including auditor's fees and expenses and any accountants' fees and expenses, incurred in making the audit and also all attorneys' fees and costs incurred in collecting said fees or expenses if legal counsel is engaged or if judicial action is necessary to enforce this Section 5.

**Section 6.     Refund of Contributions**

a.     General. Except to the extent permitted by ERISA and the Code, Contributions made by Employers are irrevocable, and it shall be impossible under any conditions for any amounts contributed to the Fund or any part of the corpus or income of the Fund to revert to, or be used or enjoyed by, any Employer, the International Union or the Association or be used for or diverted to purposes other than for the exclusive benefit of participants or their beneficiaries under the Plan (such benefit including the payment of the expenses of the Fund).

b.     Other Circumstances Permitting Return of Contributions. A Contribution to the Fund by an Employer that was made by a mistake of fact or law shall be returned to such Employer, to the extent provided in policies and procedures adopted by the Trustees consistent with the provisions of section 403(c)(2) of ERISA applicable to multiemployer plans.

**Section 7.      Policies and Procedures**

The Trustees are authorized to adopt such policies and procedures as they may deem appropriate to carry out the provisions of this Article V, and such policies and procedures shall be binding on the Employers the same as if they were contained in this Trust Agreement.

# ARTICLE VI. EXIT CONTRIBUTION

**Section 1.      Imposition of Exit Contribution**

The Trustees may, in their sole and absolute discretion, impose an "Exit Contribution" (as determined below) on any Employer who has a "Triggering Event" on or after January 1, 2003. While the actual cost of a Triggering Event cannot be precisely determined, the Exit Contribution is designed to cover the additional costs incurred by the Fund as a result of a Triggering Event.    Each Employer agrees to pay an Exit Contribution by continuing to contribute, or being obligated to contribute, to the Fund on and after the effective date of this Article.

**Section 2.      Triggering Event Defined**

For purposes of this Article VI, a "Triggering Event" occurs when an Employer's Contribution Rate significantly declines (as determined by the Trustees) or the Employer ceases to have an obligation to contribute to the Fund on some or all of its Employees, but is not required to pay any withdrawal liability to the Fund under Title IV of ERISA as a result thereof.

**Section 3.      Determination of the Exit Contribution**

The amount of an Employer's Exit Contribution is equal to contributions due for the thirty-six months, preceding the month in which the Triggering Event occurs.  The Exit Contribution shall be paid to the Fund no later than the 20th of the month following the month in which the Triggering Event occurs or if later, by the 20th of the month following the month in which the Fund makes an Exit Contribution assessment.

**Section 4.      Treatment of an Exit Contribution**

The Exit Contribution is a Contribution for purposes of the Fund's governing documents, including, but not limited to, Article IV of this Agreement and Declaration of Trust, as amended, and an Employer's failure to make an Exit Contribution constitutes a delinquency under the terms of the Fund's governing documents and will be treated in the same manner as other delinquent Contributions.

**Section 4.    Notification of Termination**

Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local of the International Union and each Employer and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Fund.

# ARTICLE XIII.  MISCELLANEOUS PROVISIONS

**Section 1.    Termination of Individual Employers**

An Employer may, in the discretion of the Trustees, cease to be an Employer within the meaning of this Agreement and Declaration of Trust when such Employer is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make Contributions to the Fund; is delinquent in Contributions or reports to the Fund; fails to furnish the Fund with a copy of such Employer's Collective Bargaining Agreement with the Union or other agreement requiring Contributions to the Fund; agrees to a Collective Bargaining Agreement with the Union or other agreement requiring Contributions to the Fund, the terms of which the Trustees determine are not consistent with this Agreement and Declaration of Trust; or fails to agree to be bound by the terms and provisions of this Agreement and Declaration of Trust and any amendments and modifications hereof.

**Section 2.    Vested Rights**

No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be required by ERISA, be specifically determined by the Trustees or specifically provided in the Plan.

**Section 3.    Encumbrance of Benefits**

It is the intention of the Trustees to make it impossible for participants or pensioners covered by the Plan to unwisely imperil the provisions made for their retirement payments hereunder.

It is hereby expressly provided that no participants or pensioners hereunder shall have the right to assign, alienate, transfer, sell, hypothecate, mortgage, encumber, pledge or anticipate any retirement payments or portions thereof and any such assignment, alienation, transfer, sale, hypothecation, mortgage, encumbrance, pledge or anticipation shall be void and of no effect whatsoever unless such action shall be in compliance with Internal Revenue Service Regulation §1.401(a)-13(c)(1) or its successor which allows payment of a Benefit or a portion of it to a third party if the beneficiary's authorization of such payment is revocable at any time and if the third party acknowledges to the Plan Administrator that it has no enforceable right in or to a Benefit payment or portion thereof and provided that the Trustees, in their discretion, allow such action, or such action is in accordance with the applicable requirements of a qualified domestic relations order.

So that such retirement payments or portions thereof shall not in any way be subject to any legal process, execution, attachment or garnishment or be used for the payment of any claim against

**EXHIBIT 2**

any participants or pensioners, or be subject to the jurisdiction of any bankruptcy court or insolvency proceedings by operation of law or otherwise, the Trustees shall have the right to terminate or postpone any pension payments to a pensioner.

### Section 4.    Situs and Governing Law

The Commonwealth of Virginia shall be deemed the situs of the Fund created hereunder. All questions pertaining to validity, construction and administration of this Agreement and Declaration of Trust shall be determined in accordance with the laws of the Commonwealth of Virginia, except as required by ERISA or other applicable federal law.

### Section 5.    Construction of Terms

Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the plural form they shall be construed as though they were also used in the singular form in all situations where they would so apply.

### Section 6.    Certification of Trustees' Actions

Any one Trustee or any group composed of Trustees, if duly authorized by vote of the Trustees, may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Fund or with the Trustees shall be fully protected in reliance placed on such duly executed document.

### Section 7.    Severability

Should any provision in this Agreement and Declaration of Trust or in the Plan or rules and regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the other provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

### Section 8.    Titles

The title headings of the various Sections and Articles herein are for the purpose of convenience only and shall not have any legal significance apart from the text.

**Sheet Metal Workers' National Pension Fund**
**Policies and Procedures for the Collection of Contributions**
**2004 Edition***

## I. INTRODUCTION

A.      Declaration of Policy.

It is the policy of the Trustees of the Sheet Metal Workers' National Pension Fund (the "Trustees") to collect all employer contributions as such contributions become due, and to make such diligent and systematic efforts as are appropriate under the circumstances. This document sets forth the policies and procedures, which the Trustees, including any duly appointed committee of the Board of Trustees, their agents and/or designees, should implement and materially follow in the collection of employer contributions. The policies and procedures set forth herein shall be materially followed unless the Trustees determine that it would not be prudent to do so in particular circumstances.

B.      Definitions.

As used herein and solely for purposes of these policies and procedures, the following terms are defined as follows:

1.      **Fund** - the Sheet Metal Workers' National Pension Fund, and as circumstances dictate, any employees, agents, and/or third-party administrators acting on its behalf.

2.      **Policies and Procedures** - the Sheet Metal Workers' National Pension Fund Policies and Procedures for the Collection of Contributions.

3.      **Employer** - an Employer which has, or has had, an obligation to contribute to the Fund under the terms of a collective bargaining agreement or other agreement, by applicable law, or under the terms of the Fund's governing documents.

4.      **Contributions** - Contributions due from an Employer to the Fund pursuant to the terms of a collective bargaining agreement or other agreement, or which are due the Fund under the terms of the Fund's governing documents.

5.      **Reports** - reports identifying the hours worked by persons for whom Contributions are required, and which are required to be submitted with Contributions to the Fund pursuant to the terms of a collective bargaining agreement or other agreement, or under the terms of the Fund's governing documents.

---

* Adopted by action of the Collection Committee of the Board of Trustees, February 25, 2004.      **EXHIBIT 3**

## SECTION II

## POLICIES AND PROCEDURES REGARDING
## COLLECTION OF CONTRIBUTIONS GENERALLY

A.    The Trustees shall take all reasonable steps necessary or appropriate to collect all Contributions.

B.    The Trustees shall take all reasonable steps necessary or appropriate to ensure that Contributions and Reports are received by the Fund on or before the date required, and in no event after the Delinquency Date.

C.    In any situation in which the terms of the Fund's governing documents conflict with the terms of any agreement (collectively bargained or otherwise) pursuant to which an Employer contributes to the Fund, the Trustees shall take appropriate steps to enforce the terms of the Fund's governing documents.

## SECTION III

## POLICIES AND PROCEDURES REGARDING THE
## COLLECTION OF DELINQUENT CONTRIBUTIONS

The following sets forth the Fund's Policies and Procedures with respect to the collection of Delinquent Contributions.

A.    The Trustees shall assess interest on Delinquent Contributions in accordance with the terms of the Trust Agreement.    The Billing and Eligibility Department shall maintain records of the interest assessed on Delinquent Contributions.

B.    The Trustees shall impose liquidated damages on Delinquent Contributions in accordance with the terms of the Trust Agreement.    These liquidated damages are an estimate, to the best of the Trustees' ability, of the approximate cost in additional administrative expenses and losses caused by an Employer's failure to timely remit Contributions.    The Billing and Eligibility Department shall maintain records of liquidated damages assessed on Delinquent Contributions.

C.    If Delinquent Contributions are not received within five (5) calendar days after the Delinquency Date, the Billing and Eligibility Department shall send a written notice to the Employer (the "First Notice") advising the Employer that the Delinquent Contributions, as well as interest and liquidated damages in the amount set forth in the Trust Agreement, must be received immediately.

D.    If the Delinquent Contributions are not received by the Fund within ten (10) calendar days of the date of the First Notice, the Billing and Eligibility Department shall promptly send a second notice to the Employer (the "Second Notice").    This Second

Notice shall include a statement that the Employer may be assessed additional interest charges, liquidated damages, attorney's fees, accountant's fees, and court costs incurred in the collection of the Delinquent Contributions. A copy shall be sent to the local union with which the Employer is signatory to a collective bargaining agreement.

E.    If the Delinquent Contributions are not received by the Fund within fifteen (15) days of the date of the Second Notice, the Billing and Eligibility Department shall promptly send a Final Notice to the Employer and a notice to the business manager of the local union with which the Employer is signatory to a collective bargaining agreement.

1.    The Final Notice sent to the Employer shall advise that the Employer is liable for additional interest charges, liquidated damages, attorney's fees, accountant's fees, and court costs incurred in the collection of the Delinquent Contributions. The Final Notice shall also advise the Employer that if the Delinquent Contributions are not received within five (5) calendar days from the date of the Final Notice, the Fund will refer the matter to legal counsel for collection.

2.    The notice sent to the local union business manager shall identify the Delinquent Employer, the months for which Delinquent Contributions are unpaid, and state that the Trustees are authorized to terminate the participation of an Employer in accordance with the terms of the Fund's governing documents. The notice sent to the local union business manager shall also request the assistance of the local union in efforts to collect the Delinquent Contributions.

3.    Furthermore, the Billing and Eligibility Department shall send a notice to the Delinquent Employer's contractors' association, if applicable, advising the contractors' association that the Employer is delinquent in its contribution obligation, the months for which Delinquent Contributions are unpaid, and stating that the Trustees are authorized to terminate the participation of an Employer pursuant to Article XIII, Section 1 of the Trust Agreement.

F.    If the Employer pays the Delinquent Contributions, but does not pay the accrued interest or any other amounts owed, acceptance of the Delinquent Contributions shall not constitute a waiver of the Fund's right to assess and/or collect the accrued interest, liquidated damages and/or any other amounts.    If the Trustees, in their sole and absolute discretion, determine that such an action may promote the diligent collection of Contributions, they may refer an Employer to legal counsel ("Counsel") to institute legal proceedings or other action to collect interest and/or liquidated damages from an Employer whose Contributions were not paid by the Delinquency Date, even if such Contributions were paid prior to the institution of legal proceedings or other action.

G.    If any Employer becomes a Delinquent Employer more than once in a six-month period, the Trustees may require that Employer remit Contributions on a weekly basis for a period of time the Trustees deem suitable to ensure prompt future payment of Contributions and/or until the Employer's delinquency is fully resolved. In the event that an Employer is required to contribute on a weekly basis, Contributions shall be due

within one week of the last day of the week in which work requiring Contributions is performed.

H.    Furthermore, in the event that an Employer becomes a Delinquent Employer more than once in a six-month period, or whose check for Contributions is dishonored by the bank or financial institution upon which it is drawn, the Trustees may require that the Employer post a bond in such amount as the Trustees deem necessary or proper.

I.    The Billing and Eligibility Department is authorized to undertake settlement discussions with Delinquent Employers prior to referral to Counsel. The Trustees may authorize the Billing and Eligibility Department to enter into settlements in accordance with guidelines established by the Trustees.

J.    From time to time, the Trustees may delegate collection to local collection agents. Such local collection agents shall agree to follow these procedures, or if the Trustees deem it appropriate, be permitted to follow other procedures that are reasonable, systematic and diligent collection procedures. Furthermore, any collection procedures employed by local collection agents shall comply with ERISA and all applicable law, including, but not limited to, Prohibited Transaction Class Exemption 76-1.

## SECTION IV

### LEGAL ACTION TO COLLECT DELINQUENT CONTRIBUTIONS AND ENFORCE AUDIT RIGHTS

A.    If the Delinquent Contributions are not received within five (5) days of the date of the Final Notice to the Employer, the Billing and Eligibility Department shall refer the Employer to Counsel for collection unless the Delinquency Contributions, interest and liquidated damages, total less than $3,000.00. When referring the matter to Counsel, the Billing and Eligibility Department shall provide all information necessary for Counsel to prepare a lawsuit, including copies of relevant documents from the Fund's files.

B.    Upon receipt of a referral from the Billing and Eligibility Department, Counsel shall review the information provided by the Fund and conduct a legal and factual inquiry appropriate under the circumstances. Upon completion of that investigation, and unless circumstances dictate otherwise, Counsel shall file suit against the Employer as soon as practicable under the facts and circumstances of the case.

C.    Once Counsel has filed suit to collect the Delinquent Contributions, the amount of liquidated damages assessed on Contributions due but unpaid on the date suit is filed shall be the greater of: interest on the Delinquent Contributions determined in accordance with the Trust Agreement (calculated from the Delinquency Date); or 20% of the Delinquent Contributions, in accordance with ERISA and the Trust Agreement.